IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JESSE LEE, ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CASE NO.: 3:07-cv-749-JPG-DGW |
| vs. ) | |
| ) | |
| DONALD HULICK and GARY CONDOR, ) | |
| ) | |
| **Defendants.** ) | |

### REPORT AND RECOMMENDATIONS

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge J. Phil Gilbert pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a) for a Report and Recommendation on the issue of whether Plaintiff exhausted his administrative remedies with the Illinois Department of Corrections prior to filing this lawsuit. It is **RECOMMENDED** that the Court **FIND** that Plaintiff failed to exhaust his administrative remedies, that the Motion for Summary Judgment filed by Defendants Hulick and Condor (Doc. 38) be **GRANTED**, that the action be **DISMISSED,** and that the Court adopt the following findings of fact and conclusions of law.

#### FINDINGS OF FACT

Plaintiff Jesse Lee filed his complaint in the matter on October 24, 2007, alleging deliberate indifference to his serious medical needs by Defendants Donald Hulick, G. Gladson, and Gary Conder. Plaintiff alleged that on May 6, 2007, while an inmate at Menard Correctional Center, he cut his finger on a metal bed frame. He sought, but did not receive medical treatment until June 29, 2007. He experienced excruciating pain during that time. When he did receive medical treatment, an x-ray revealed a piece of metal imbedded in his finger. A Dr. Kreig (not a

defendant) performed surgery to remove it. During the surgery, a piece of the metal broke off and the doctor was not able to remove all of it from his finger (Doc. 1). In the complaint, Plaintiff stated he filed three grievances regarding the lack of medical treatment on May 7, June 16, and June 20, 2007. He did not include copies of these grievances with the complaint.

On threshold review, the Court dismissed Defendant Gladson but allowed Plaintiff to proceed against Defendants Hulick and Conder on the deliberate indifference claim (Doc. 19).

On January 15, 2010, Defendants Hulick and Conder filed a Motion for Summary Judgment claiming Plaintiff did not exhaust his administrative remedies before filing suit as required by the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a) (Doc. 38). Plaintiff did not file a response to the motion for summary judgment. In the motion, Defendants contend that no proof exists that Plaintiff filed any grievances in May or June 2007 about the injury to his finger. Defendants assert that Plaintiff did not produce copies of the alleged grievances in discovery. As an exhibit to the motion, Defendants attached Plaintiff's responses to Defendants' discovery requests in which Plaintiff stated that he did prepare "emergency" grievances regarding the injury to his finger and forwarded them directly to the warden at Menard by placing them in institutional mail. They were picked up by a gallery officer. Plaintiff reported that the grievances "were never returned to [him] by [the] warden's office." He also stated that Defendant Hulick prevented him from exhausting his grievances by having him transferred "in an attempt to conceal any information or wrongdoing and denying me further medical procedures." Defendants asked Plaintiff to produce copies of the grievances. He responded: "grievances kept by CAO/Warden's Office" (Doc. 38-1, Exh. A, pp. 1-6).

With the motion, Defendants filed the affidavit of Michelle Clark, an Executive with the Illinois Department of Corrections Legal Services assigned as an Early Case Intervention

Coordinator at Pontiac Correctional Center. Ms. Clark averred that she searched Plaintiff's master file and found no grievances from May or June 2007 regarding a finger injury. Ms. Clark averred, however, that the master file did contain other "documentation generated at Menard Correctional Center while Lee was housed at that facility from August 2005 to September 2007" (Doc. 38-1, Exh. B, p. 7).

Also attached to the motion for summary judgment is the affidavit of Brian K. Fairchild, Chairperson of the Illinois Department of Corrections Administrative Review Board ("ARB"). Fairchild avers that he searched ARB records and found the following grievances:

1. Plaintiff sent a letter to the ARB dated February 8, 2008, about lack of medical care. The ARB returned the letter to him on February 20, 2008, instructing him to file proper grievance forms. The ARB also noted that because he was transferred out of Menard on September 19, 2007, grievances regarding issues or incidents at Menard were not subject to review by the ARB because Plaintiff did not file them within 60 days of his transfer from Menard to Pontiac as required in the Illinois regulations (Doc. 38-1 p. 13).

2. Plaintiff filed two grievances at Pontiac on December 4 and 5, 2008, regarding medical treatment for his hand. On appeal, those grievances were returned unreviewed because they were submitted outside the 60-day timeframe (Doc. 38-1, pp. 18-27).

3. Plaintiff filed a grievance at Pontiac on March 21, 2009, regarding the lack of medical treatment he received for his injured finger. On appeal, the grievance was returned unreviewed because it was submitted outside the 60-day timeframe (Doc. 38-1, pp. 28-34).

(Fairchild affidavit, Doc. 38-1, pp. 9-11). Mr. Fairchild further averred that he found no other grievances regarding medical treatment for the injury to Plaintiff's finger in ARB records. Mr.

Fairchild submitted as an exhibit to the affidavit a true and accurate copy of Plaintiff's Cumulative Counseling Summary. The summary contains no record of Plaintiff speaking to a counselor about an injury to his finger in May or June 2007, nor does it refer to any grievances filed about the injury during that time. As relevant here, the counseling summary contains the following entries:

1. On March 27, 2007, Correctional Counselor Regina Summers informed Plaintiff that he was ineligible for transfer while housed in segregation;

2. On April 28, 2007, Counselor Summers answered Plaintiff's grievance on the "transfer issue" by informing him that segregation inmates are not eligible for transfer and are generally not processed for transfer until six months after they have been released from segregation;

3. On August 23, 2007, Correctional Counselor Barbara Mueller reported that Plaintiff submitted an institutional request for transfer to Pontiac; and

4. On September 7, 2007, Counselor Mueller noted that Plaintiff "wants to be transferred to Pontiac."

(Doc. 38-1, pp. 38-39).

*Pavey Hearing*

In light of the Seventh Circuit's opinion in *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), the undersigned held a hearing in the matter on May 11, 2010, to determine whether Plaintiff had properly exhausted his administrative remedies.

At the hearing, Defendants asserted that although Plaintiff alleged he filed grievances on May 7, and June 16 and 20, 2007, those grievances do not appear in his master file, they are not

mentioned in his cumulative counseling summary, and Plaintiff did not produce them in discovery. Thus, Defendants argued, the evidence is unrebutted that no such grievances exist.

In response, Plaintiff argued that he filed the three grievances as "emergency" grievances and sent them directly to Warden Donald Hulick. He did not keep copies. He never received responses to the grievances (Doc. 44, p. 7). He opined that the grievances were ignored in an attempt to cover up misconduct by IDOC officials (Doc. 44, p. 8). The Court inquired as to what action Plaintiff took after receiving no response. Plaintiff stated that he wrote letters to the medical director at Menard. Plaintiff stated that he did not have copies of the grievances or letters because he had no way of getting copies and at the time he wrote them he did not contemplate litigation (Doc. 44, p. 9). Plaintiff also argued that a few months after he injured his finger and filed the grievances and letters, he did receive an x-ray of his finger, but he was then "mysteriously" transferred to another facility. He stated he did not know why he was transferred.

Defendants pointed out that the cumulative counseling summary indicates Plaintiff asked his counselor about transfer prior to his injury. Defendants thus argued that Plaintiff's belief that he was transferred "to hush up the fact that somebody didn't respond to a grievance" could not be true based on his inquiries about transfer before and after his injury. Defendants further argued that inmates routinely receive copies of their grievances, and as such, it was incumbent upon Plaintiff to submit them with his complaint or in responses to discovery requests. Finally, Defendants asserted that copies of all grievances, whether filed as an emergency or through the regular procedures, are placed in the inmate's master file.

In summary, Defendants argued that Plaintiff has no evidence, aside from his own statements, that he filed the three grievances as alleged, and the documents submitted with the

motion for summary judgment further demonstrate the grievances were never filed.

After the *Pavey* hearing, Plaintiff filed a number of documents with the Court that, among other things, make additional arguments regarding exhaustion of administrative remedies (Docs. 45-51). The undersigned has reviewed those documents finds that none of them contain evidence that would demonstrate Plaintiff filed grievances regarding the injury to his finger in May or June 2007.

### CONCLUSIONS OF LAW

The Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Illinois Administrative Code sets out the procedure for the filing of grievances by inmates. An inmate must first attempt to resolve the complaint informally. If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. 20 Ill. Admin. Code § 504.810. The grievance officer is required to advise the Chief Administrative Officer ("CAO") at the facility in writing of the findings on the grievance. The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. 20 Ill. Admin. Code § 504.830. An inmate may

appeal the decision of the CAO in writing within 30 days. 20 Ill. Admin. Code § 504.850. *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines there exists a substantial risk of imminent person injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. 20 Ill. Admin. Code §504.840. Inmates may file grievances directly with the ARB on issues that pertain to a facility other than the facility where the offender is currently assigned. 20 Ill. Admin. Code §514.870(a)(4).

*Availability of Administrative Remedies*

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13, 2009 WL 330531 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba v. Stepp*, 458 F.3d 678, 684 (2006).

Plaintiff here filed grievances regarding the May 6, 2007, injury to his finger in 2008 and 2009. Those grievances were returned to him unreviewed because they were not filed within 60

days of his transfer from Menard to Pontiac. Plaintiff stated in his complaint that he filed timely grievances regarding the finger injury in May and June 2007, but he provides no evidence of these submissions, other than his own statements. Plaintiff's argument then is essentially that because the warden never responded to his "emergency" grievances, the Court should deem his remedies exhausted and allow him to proceed to discovery on the merits of the case. In opposition, Defendants provide evidence that Plaintiff never filed grievances regarding the injury to his finger in May or June 2007. They specifically point out that Plaintiff could not produce copies of the grievances, no such grievances exist in the Plaintiff's master file, and that the cumulative counseling summary does not show that Plaintiff filed any or even inquired about the injury to his finger in May or June 2007. By way of explanation, Plaintiff maintains that the grievances were ignored or "covered up" in an attempt to hide wrongdoing on the part of prison officials who failed to address his medical needs and who regularly conspire to discriminate against inmates convicted of sex crimes involving children. Plaintiff asserts that he was "mysteriously" transferred from Menard to Pontiac after he filed grievances and implied that his transfer was related to his filing of grievances.

Plaintiff offers no evidence, other than his statements, that he filed grievances. Thus, whether Plaintiff exhausted his administrative remedies hinges on Plaintiff's credibility. Plaintiff's credibility is undermined by the contradictions in his explanation about why he was transferred from Menard to Pontiac in September 2007. Plaintiff stated at the hearing that he did not know why he was transferred, but implied that his transfer was related to the merits of the grievances he allegedly filed in May and June 2007. The Cumulative Counseling Summary submitted by Defendants indicates that Plaintiff asked his counselor about a transfer out of Menard on March 27, 2007, and April 28, 2007, both prior to his May 6, 2007, injury. The

counseling summary further shows that Plaintiff filed an institutional transfer request on August 23, 2007, and told his counselor he wanted to be transferred to Pontiac in a face-to-face meeting on September 7, 2007.  Plaintiff was transferred on September 19, 2007.  Plaintiff's explanation that his "emergency" grievances were ignored as part of a larger scheme to cover up misconduct, culminating in a transfer out of Menard, does not hold up under the unrebutted evidence submitted by Defendants that Plaintiff inquired about a transfer both before and after his injury.  Based on these inconsistencies, the Court finds Plaintiff's statements not fully credible.  Taken together, Plaintiff's failure to produce any corroborating documents, his lack of credibility, and the unrebutted evidence submitted by Defendants lead the Court to conclude that Plaintiff did not file timely grievances regarding the injury to his finger in May and June 2007.  As such, he did not exhaust his administrative remedies prior to filing suit.  The undersigned therefore recommends that the action be dismissed.  Because the Plaintiff cannot now go back and exhaust his remedies due to deadlines imposed by Illinois regulation, dismissal should be with prejudice.

## CONCLUSION

Based on all the foregoing, it is hereby **RECOMMENDED** that the Court **FIND** that Plaintiff failed to exhaust his administrative remedies, that the Motion for Summary Judgment filed by Defendants Hulick and Condor (Doc. 38) be **GRANTED**, that the action be **DISMISSED** with prejudice, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 73.1, the parties shall have fourteen (14) days after the service of this Recommendation to file written objections thereto.  The failure to file a timely objection may result in the waiver of the right to challenge these Recommendations before either the District Court or the Court of Appeals.  *Snyder v. Nolen*, 380

F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED:  August 24, 2010**

                                          *s/Donald G. Wilkerson*
                                          **DONALD G. WILKERSON**
                                          **United States Magistrate Judge**